UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARA S. TRAFELET,

                              Petitioner,

            -against-

CIPOLLA & CO., LLC,

                              Respondent.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED:  9/26/2023               │
└─────────────────────────────────────┘
```

22 Civ. 4888 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Lara S. Trafelet, moves, pursuant to §§ 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11, to vacate or modify the revised partial final arbitration award, dated May 5, 2022 (the "Merits Award"), and the revised final award, dated September 27, 2022 (the "Fee Award") (collectively, the "Awards"), in the matter styled *Cipolla & Co., LLC v. Lara S. Trafelet*, Case No. 01-18-002-4828, before the American Arbitration Association ("AAA"). ECF No. 32; *see* Am. Pet., ECF No. 30; Pet'r Mem., ECF No. 33; Pet'r Opp., ECF No. 76. Respondent, Cipolla & Co., LLC ("CCO"), cross-moves for an order confirming the Awards and entering judgment in CCO's favor. ECF No. 40; *see* Cross Pet., ECF No. 66; Resp't Mem., ECF No. 68; Resp't Reply, ECF No. 85. For the reasons set forth below, Trafelet's motion is DENIED, and CCO's cross-motion is GRANTED.

**BACKGROUND**[1]

I.    Factual Background

In September 2015, Trafelet initiated divorce proceedings against her then-husband. Am. Pet. ¶ 23; Resp't 56.1 ¶ 6, ECF No. 67. Stuart Slotnick represented Trafelet in the divorce

---

[1] The facts in this section are taken from the parties' petitions, Rule 56.1 statements and responses, and declarations. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. Proceedings to vacate or modify an arbitration award are treated "akin to a motion for summary judgment." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).

proceedings from November 2016 through early December 2017.  Am. Pet. ¶ 13.  In November

2016, Slotnick, on behalf of Trafelet, retained CCO to provide "forensic accounting services" to

Trafelet under a *Kovel* retainer agreement.[2]  Resp't 56.1 ¶ 7.  Trafelet signed the retainer

agreement and agreed to be solely responsible for payment.  *Id.* ¶¶ 7–10.  The retainer agreement

provides, *inter alia*, that Trafelet could submit written objections to CCO's invoices within seven

days of the invoice date.  *Id.* ¶ 9(c).  Through October 30, 2017, CCO billed over $3.6 million for

its services.  *Id.* ¶ 45.  Slotnick reviewed all CCO invoices and did not raise any objections to the

time entries on those invoices.  *Id.* ¶¶ 28, 30.  Trafelet did not intend to pay the invoices until she

obtained funds through her divorce.  *Id.* ¶ 35.

In June 2017, the matrimonial court awarded Trafelet an interim fee award of $3.5

million to cover her professional fees, of which CCO received approximately $1.45 million.  Am.

Pet. ¶ 40; Resp't 56.1 ¶ 38.  On August 7, 2017, based on the size of Trafelet's outstanding

account balance and the fact that she had asked CCO to perform more work, CCO presented

Trafelet with an amended engagement agreement.  Resp't 56.1 ¶ 39.  The amended engagement

agreement called for Trafelet to confirm that she did not dispute the invoices she had already

received; CCO also presented Trafelet with a confession of judgment in the amount of the

outstanding balance.  *Id.*  The amended retainer agreement had several different payment

provisions compared to the original retainer agreement, including that interest on the unpaid

invoices would accrue at the rate of 15% per year.  *Id.* ¶ 40.  Trafelet signed the amended

engagement agreement but did not sign the confession of judgment.  *Id.* ¶¶ 41, 44.

On December 7, 2017, Trafelet terminated Slotnick's engagement and replaced him with

Laurie McPherson.  *Id.* ¶ 48.  Around December 15, 2017, CCO resigned as Trafelet's forensic

---

[2] *See United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).

accountant and was replaced by David Gresen.  *Id.* ¶ 49.  Gresen billed Trafelet approximately $250,000 for his work.  *Id.* ¶ 52.  Trafelet refused to pay CCO's remaining invoices.  *See* Pet'r Mem. at 9.

II.    Procedural History

On June 26, 2018, CCO filed an action with the AAA seeking to recover $2.7 million in unpaid fees and interest through May 31, 2018.  Resp't 56.1 ¶ 53.  In response, on August 8, 2018, Trafelet filed a petition in New York state court to stay the arbitration.  *Id.* ¶ 55.  In January 2019, the New York court denied Trafelet's petition.  *Id.* ¶ 58.

After arbitration restarted, in February 2020, CCO amended its statement of claim to assert a defamation claim, seeking compensatory and punitive damages for allegedly defamatory statements made in Trafelet's state court stay petition.  *Id.* ¶ 62.  Trafelet filed a statement of counterclaims with the AAA, asserting counterclaims for breach of contract, malpractice, breach of fiduciary duty, and fraud.  *Id.* ¶ 63.

The arbitration hearing began on October 13, 2020, and spanned twenty-three days.  *Id.* ¶ 64.  The final hearing date was April 28, 2021.  *Id.*  The arbitrator heard from seven fact witnesses and two expert witnesses and reviewed hundreds of exhibits.  Cross Pet. ¶ 72.  On March 22, 2022, the arbitrator issued a partial final award on liability and damages.  *Id.*; Resp't 56.1 ¶ 124.  The award was later amended in two minor respects at Trafelet's request, and the arbitrator issued the Merits Award on May 5, 2022.  Cross Pet. ¶ 72; Resp't 56.1 ¶ 125.

In the Merits Award, the arbitrator found Trafelet liable to CCO in the amount of $2.53 million for unpaid forensic accounting fees, over $1.45 million in interest on those fees accrued through the date of the Merits Award, and 15% per annum interest thereafter.  Resp't 56.1 ¶ 126.  The arbitrator also found Trafelet liable for defamation based on her statements in the New York

court stay petition and awarded CCO $2 million in compensatory damages and $500,000 in punitive damages.  *Id.* ¶ 127.

On September 27, 2022, the arbitrator issued the Fee Award, in which she ordered Trafelet to reimburse CCO an additional $1.9 million in expert fees, $2.26 million in attorney's fees, interest on the Merits Award, contingent attorney's fees on the interest, arbitration costs, and 15% per annum interest on the Fee Award.  *Id.* ¶¶ 146–47.  The arbitrator also granted a declaration that CCO "shall be entitled to recover attorney fees and costs in all future proceedings to defend and/or to enforce the award."  *Id.* ¶ 153 (emphasis omitted).  Across the Awards, the arbitrator awarded CCO over $11 million in damages, interest, fees, and costs.

## DISCUSSION

I.   Legal Standard

Under the FAA, when parties "have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, . . . any party to the arbitration may apply to the court [specified in their agreement] for an order confirming the award."  9 U.S.C. § 9.  The confirmation of an arbitration award is normally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).  Accordingly, the "court's function in confirming or vacating an arbitration award is severely limited."  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted).

The court "must grant" a motion to confirm "unless the award is vacated, modified, or corrected."  9 U.S.C. § 9; *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  An arbitrator's award is entitled to great deference and should be confirmed as long as there is a

"barely colorable justification for the outcome reached." *D.H. Blair*, 462 F.3d at 110 (citation omitted).  Further, "there is no general requirement that arbitrators explain the reasons for their award." *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted).

A party seeking to vacate an arbitration award has the burden of proof and "must clear a high hurdle" to succeed. *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).  Section 10 of the FAA provides specific grounds upon which an arbitration award may be vacated, including:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrator[] , . . . ;
>
> (3) where the arbitrator[] w[as] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrator[] exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, "a court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (citation omitted).

II.     Analysis

    A.   The Awards

Trafelet argues that the Awards "should be vacated in their entirety because the [a]rbitrator's misconduct and bias led to a fundamentally unfair proceeding."  Pet'r Mem. at 17. Specifically, Trafelet contends that: (1) the arbitrator was "guilty of misconduct" because she "improperly excluded material and non-cumulative evidence"; and (2) there was "evident partiality" because the arbitrator "failed to provide . . . Trafelet with an adequate opportunity to present her evidence and argument."  *Id.* at 17–18 (cleaned up).  The Court shall address both arguments in turn.

First, Trafelet argues that the arbitrator was guilty of misconduct under § 10(a)(3) because she "repeatedly refused to hear pertinent and non-duplicative testimony . . . central to establishing that [CCO] and . . . Slotnick . . . had taken advantage of her."  *Id* at 17, 22. Misconduct occurs for purposes of § 10(a)(3) "only where there is a denial of fundamental fairness."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr*., 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted).  An arbitration award must not be set aside based on the arbitrator's refusal to hear evidence that is cumulative or irrelevant; vacatur is appropriate only when exclusion of relevant evidence so affects the rights of a party that it is deprived of a fair hearing.  *Kruse v. Sands Bros. & Co., Ltd.,* 226 F. Supp. 2d 484, 488 (S.D.N.Y. 2002) (citing *Florasynth*, 750 F.2d at 176).  An award may be vacated only if a party's right to be heard has been "grossly and totally blocked."  *Id.* (citation omitted).

A party's disagreement with the arbitrator's decision on evidentiary rulings does not make an arbitration hearing unfair.  *Stifel, Nicolaus & Co. v. Forster*, No. 14 Civ. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015); *see Kruse*, 226 F. Supp. 2d at 488.  Arbitrators are

"afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 286 (S.D.N.Y. 2007). "Therefore, a court may not conduct a reassessment of the evidence or vacate an arbitral award because the arbitrator's decision may run contrary to strong evidence favoring the party seeking to overturn the award." *Id.*

The Court finds that the arbitrator acted within her discretion in declining to hear cumulative evidence. *Stifel, Nicolaus & Co.*, 2015 WL 509684, at *5. It was within the arbitrator's discretion to conclude that Trafelet's fact witnesses who would testify about "the value of [CCO's] services, the remaining work it left undone, and the excessiveness of its fees," Pet'r Mem. at 22, were improper opinion testimony and cumulative because Trafelet had also called an expert witness to testify on the same topics. *See* Resp't 56.1 ¶¶ 101–04. Trafelet has not shown that the exclusion of any evidence so "grossly and totally blocked" her right to be heard such that she was deprived of a fair hearing. *Kruse*, 226 F. Supp. 2d at 488.

Second, Trafelet contends that the arbitrator showed evident partiality because her "spoliation and privilege rulings were so wrong, prejudicial, and one-sided that they could only have been the product of bias." Pet'r Mem. at 18. A movant seeking vacatur under § 10(a)(2) must show partiality by "clear and convincing evidence" and must demonstrate that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Kolel Beth*, 729 F.3d at 104, 106 (citation omitted). Although the movant need not show proof of actual bias, "something more than the mere appearance of bias" is required. *Id*. at 104 (citation and quotation marks omitted). Notably, "adverse rulings alone rarely evidence partiality." *Scandinavian Reins. Co. Ltd. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 75 (2d Cir. 2012).

Here, Trafelet fails to meet the high standard of showing partiality under § 10(a)(2) by clear and convincing evidence.  Trafelet's arguments are, at best, speculative and based on not more than "mere appearance of bias."  *Kolel Beth*, 729 F.3d at 104.  Her arguments focus on her disagreements with the arbitrator's rulings against her on spoliation of evidence and privileged communications.  *See* Pet'r Mem. at 18–21 (discussing arbitrator's denial of Trafelet's motion to compel and motion for sanctions and arbitrator's grant of COO's motion to compel communications involving McPherson).  But these adverse rulings alone, without more, cannot establish the arbitrator's partiality.  *Scandinavian Reins. Co.*, 668 F.3d at 75.  Trafelet does not point to evidence of bias; rather, she attempts to cast a substantive disagreement as bias.[3]  *See id.*

Accordingly, Trafelet's motion to vacate the Awards in their entirety is DENIED.

## B.   The Defamation Award

Trafelet separately argues that the defamation award should be vacated because the arbitrator "manifestly disregarded the law[] and exceeded her authority."  Pet'r Mem. at 23.  The arbitrator found Trafelet liable for certain statements made in her New York court stay petition and awarded CCO $2.5 million in compensatory and punitive damages.  Resp't 56.1 ¶ 127. Trafelet contends, specifically, that the arbitrator: (1) failed to apply the litigation privilege to Trafelet's state court filings; (2) awarded substantial compensatory damages despite no evidence of harm; and (3) awarded punitive damages despite an express provision in the parties' engagement agreement precluding them.  Pet'r Mem. at 23.

---

[3] The Court also rejects Trafelet's argument that the arbitrator's "issuance of two awards for *more than four times* the fees . . . Trafelet owed to [CCO], and the numerous legal errors embedded in those awards" further evidences the arbitrator's bias.  Pet'r Mem. at 22.  Trafelet's statement that "no impartial arbitrator would have permitted a $2.5 million account stated claim to balloon into an $11.1 million award," *id.* at 23, is conclusory and not supported by any legal authority.

"The boundaries of the manifest disregard concept are not precisely defined, but the term clearly means more than error or misunderstanding with respect to the law." *Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d 396, 407 (2d Cir. 2009) (quotation marks omitted).  A mere demonstration that the arbitrator made "the wrong call on the law" does not show manifest disregard; "the award should be enforced . . . if there is a *barely colorable justification* for the outcome reached." *Id.* (quoting *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir. 2004)).  Vacatur for manifest disregard is, as a result, "rare" and only done in "extreme" cases. *Id.*

> The "manifest disregard" inquiry has three steps:
>
> First, [the Court] must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. . . .
>
> Second, once it is determined that the law is clear and plainly applicable, [the Court] must find that the law was in fact improperly applied, leading to an erroneous outcome. . . .
>
> Third, . . . [the Court] look[s] to the subjective element, that is, the knowledge actually possessed by the arbitrator[] . . . the arbitrator must have known of [the law's] existence, and its applicability to the problem before [her in order to intentionally disregard the law].

*Id.* at 408 (citation omitted).

The Court rejects Trafelet's argument that the arbitrator manifestly disregarded the litigation privilege, "which protects statements made in pleadings *if they are at all pertinent to the litigation*."  Pet'r Mem. at 25 (quoting *Lacher v. Engel*, 33 A.D.3d 10, 13 (N.Y. App. Div. 2006)) (emphasis in original).  In the Merits Award, the arbitrator carefully considered the litigation privilege and explained that "such privilege does not extend to matter, having no materiality or pertinency to such questions."  Merits Award at 29, ECF No. 35-5 (citation omitted).  In reaching her decision, the arbitrator examined whether Trafelet's statements were pertinent to the motion to stay based on the four causes of action Trafelet alleged in the state

court. *Id*. at 30.  The arbitrator ultimately concluded that Trafelet's "statements were obviously not 'material and pertinent to the proceeding.'  Thus, the litigation privilege [wa]s lost." *Id.* at 31.  Therefore, the Merits Award demonstrates that the arbitrator did not intentionally disregard the litigation privilege; to the contrary, she carefully considered its applicability, determined as a matter of law that it did not apply to Trafelet's state court filings, and provided at least a "barely colorable justification" for ruling that the litigation privilege was lost.  *Telenor Mobile Commc'ns*, 584 F.3d at 407; *see* Merits Award at 29–31.

Likewise, the Court rejects Trafelet's argument that the arbitrator "manifestly disregarded the fundamental tenet that substantial compensatory damages must be proved, not assumed . . . and ignored that the [defamatory] statements have been under seal since 2018—and are therefore unlikely to cause any present or future harm."  Pet'r Mem. at 28.  In the Merits Award, the arbitrator examined the factual record before her and concluded that CCO lost at least one engagement because of the defamatory statements and further explained that "it is common sense, . . . that anyone reading [Trafelet's] court petition would be given great pause at taking a risk on hiring [CCO] . . . . [T]he damage to [CCO's] reputation done by these insidious, false statements cannot be mitigated."  Merits Award at 32–33.  The arbitrator did not manifestly disregard the law in awarding compensatory damages because she reviewed the evidence before her, drew inferences from that evidence, and came to a reasoned conclusion about CCO's damages.

Lastly, the arbitrator did not manifestly disregard the law or exceed her authority in awarding punitive damages to CCO.  Pet'r Mem. at 28–29.  Under § 10(a)(4), an arbitral decision may be vacated where the "arbitrator[] exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not

made." 9 U.S.C. § 10(a)(4); *Beijing Shougang Mining Inv.*, 11 F.4th at 161. The Second Circuit

has "consistently accorded the narrowest of readings" to the authority to vacate arbitration

awards under § 10(a)(4). *Beijing Shougang Mining Inv.*, 11 F.4th at 161 (citation omitted).

Therefore, the Court's analysis under § 10(a)(4) "focuses on whether the arbitrator[] had the

power, based on the parties' submissions or the arbitration agreement, to reach a certain issue,

not whether the arbitrator[] correctly decided that issue." *Id.* (citation omitted). "Section

10(a)(4) does not permit vacatur for legal errors." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113,

122 (2d Cir. 2011) (citation omitted).

Trafelet points to the liability limitation clause in her initial retainer agreement with

CCO, which states: "The parties will not, in any event, be liable to the other, for any reason, for

any consequential, incidental, special, punitive or indirect damages." Resp't 56.1 ¶ 9(g). But the

liability waiver clause applies only to claims "arising out of or relating to the aforementioned

services"—in other words, for CCO's accounting services for Trafelet. ECF No. 35-8 at 5. The

arbitrator did not exceed her authority in concluding that CCO's defamation claim against

Trafelet did not "arise out" of the engagement and, thus, was not covered by the plain language

of the retainer agreement's waiver of punitive damages. *See* Merits Award at 33–34.

Nor did the arbitrator manifestly disregard the law in awarding punitive damages. The

arbitrator reasoned that Trafelet's statements were "so needlessly defamatory as to warrant the

inference of express malice." *Id.* at 34. She further explained that Trafelet's counsel,

McPherson, who "was the architect of the [state] court [m]otion," "repeated unsolicited, personal

attacks against [CCO] in her narratives that went far beyond relevancy regarding the questions

she was asked and beyond the bounds of a fact witness." *Id.* Trafelet has not satisfied the high

burden of proving that the arbitrator manifestly disregarded the law in concluding that punitive damages were appropriate in this instance.

Accordingly, Trafelet's motion to vacate the defamation award is DENIED.

C.   Expert Costs

In the Fee Award, the arbitrator granted CCO $1.9 million in *pro se* expert costs.  Fee Award at 18, ECF No. 35-6.  Trafelet argues that this award should be vacated because it "exceeded [the arbitrator's] authority and manifestly disregarded the plain terms of the parties' [retainer agreement]."  Pet'r Mem. at 29.

Not so.  The retainer agreement provides that Trafelet would be responsible for CCO's "reasonable costs of collection, including attorney fees, arbitration and court costs, and interest thereon."  Resp't 56.1 ¶ 9(d).  Because § 10(a)(4) does not permit vacatur for legal errors, the Court does not focus on "whether the arbitrator[] correctly decided that issue," just that the arbitrator "had the power, . . . to reach [the] issue."  *Beijing Shougang Mining Inv*., 11 F.4th at 161.  The arbitrator did not exceed her authority in concluding that CCO was entitled to recover *pro se* expert witness fees based on her analysis of New York state law in the *pro se* attorney's fees context.  Fee Award at 12–13.

Likewise, the Court rejects Trafelet's argument that "no reasonable independent expert would have spent anything close to 3,700 hours or $2 million on a claim of this size, which is preposterous on its face," Pet'r Mem. at 30, as conclusory and unsupported by legal or factual authority.  The arbitrator reviewed CCO's affidavit and detailed invoices before issuing the Fee Award granting CCO *pro se* expert costs.  Fee Award at 14–15.  The Court finds that the arbitrator did not exceed her authority or manifestly disregard the law in doing so.

Accordingly, Trafelet's motion to vacate the award of expert costs is DENIED.

D.  Prejudgment Interest and Prospective Attorney's Fees and Costs

Lastly, Trafelet argues that "several aspects of the [a]rbitrator's interest awards should also be vacated or modified."  Pet'r Mem. at 32.  Specifically, Trafelet argues that: (1) the 15% interest rate "should apply only to the principal amount of unpaid fees"; (2) "the Awards give [CCO] the benefit of compound interest, even though the [retainer agreement] provides only for simple interest"; and (3) "the accrual of 15% interest on the unpaid principal balance of $2.5 million should have been tolled" during certain time periods.  Pet'r Mem. at 32–34.

Trafelet does not contend that any of the arbitrator's interest awards should be vacated or modified under the "very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading*, 333 F.3d at 388.  Rather, Trafelet argues that the arbitrator's rulings are legally erroneous but does not contend that they meet the manifest disregard of law standard or satisfy any of the § 10(a) grounds for vacating an arbitration award.  *See* Pet'r Mem. at 32–34. Because an arbitrator's award is entitled to great deference and should be confirmed as long as there is a "barely colorable justification for the outcome reached," *D.H. Blair*, 462 F.3d at 110, and Trafelet has not presented any ground for vacating that award beyond legal error, the Court rejects Trafelet's arguments that the arbitrator's interest award rulings should be vacated or modified.

Further, the Court rejects Trafelet's argument that the arbitrator's award of prospective relief should be vacated.  Pet'r Mem. at 35.  The parties' retainer agreement provides:  "In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney fees [sic], for having to compel arbitration or defend or enforce the award."

Resp't 56.1 ¶ 9(f).  Because the Court finds that Trafelet's challenge to the Awards is unsuccessful, CCO is entitled to prospective attorney's fees and costs.

Accordingly, Trafelet's motion to vacate or modify the interest awards and award of prospective relief is DENIED.

###### E.   Confirmation of the Awards

The FAA provides that "any party to [an] arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 9.  "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter."  *First Cap. Real Est. Invs., L.L.C. v. SDDCO Brokerage Advisors*, LLC, 355 F. Supp. 3d 188, 195–96 (S.D.N.Y. 2019) (citation omitted); *see Sanluis Dev., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008).

Because the Court denies Trafelet's motion to vacate or modify the arbitration award, CCO's motion to confirm the arbitration award is GRANTED.

## CONCLUSION

For the foregoing reasons, Trafelet's petition to vacate the Awards is DENIED, and CCO's petition to confirm the Award is GRANTED.

The Clerk of Court is directed to enter judgment in favor of CCO in the amount of the Awards, to terminate the motions at ECF Nos. 32 and 40, and to close the case.

SO ORDERED.

Dated:  September 26, 2023
      New York, New York

                                            ANALISA TORRES
                                United States District Judge